## Ferry et al., Appellants, v. Protective Indemnity Company of New York.

Argued April 13, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Louis Vaira,* with him *M. E. Catanzaro,* for appellants.

*George Y. Meyer,* for appellee.

OPINION BY RHODES, J., July 15, 1944:

This action in assumpsit involves the coverage of a motor vehicle liability policy. Defendant denied coverage, and plaintiffs brought this action for reimbursement. The case was tried by a judge of the County Court of Allegheny County, without a jury, and judgment was rendered for defendant. Plaintiffs' motion to open judgment and to have judgment entered on the whole record was refused. Plaintiffs have appealed.

The question before us is one of law, as the facts are not in dispute, the parties having submitted the case on an agreed statement pursuant to Rule 56 of this court.

The policy which appellee issued to appellants covered liability for bodily injury "caused by accident and arising out of the ownership, maintenance or use of the automobile." According to the provisions of the policy the purposes for which appellants' truck was to be used were "coal and material dealers ...... hauling principally for Snyder and Swanson ...... commercial ......" The term "commercial" was defined as "use principally in the business occupation of the named insured as stated." The policy further provided that "use of the automobile for the purposes stated includes the loading and unloading thereof."

Appellants, in order to remove ashes from the basement of certain premises, parked the insured truck at the curb directly in front of the premises. A cellar door leading to the basement of the premises was located in the sidewalk between the curb and the building. Through this opening accumulated ashes might be removed from the basement. The driver of the truck, one of the appellants, entered the building by the front entrance and went to the basement, where he picked up a can of ashes in the coal or furnace room and carried it to the steps leading to the sidewalk. The steps were directly under the cellar door. When he came to the steps, carrying the can of ashes, he placed the container on the steps in front of him, leaned against the ash can to hold it in place on the steps, drew the bolt from the door and then raised the door, causing a woman pedestrian to trip on the door and fall, as the result of which she was injured. The truck driver who was moving the ash can intended to place the ashes in the truck which was parked at the curb about five feet away from the building and directly in front of the cellar door.

The claim for personal injuries was settled by appellants. There is no dispute about the reasonableness of

the settlement, and liability is denied solely on the ground that the accident did not come within the provisions of the policy.

A contract of insurance must have a reasonable interpretation, such as was probably in the contemplation of the parties when it was made (*Humphreys v. National Benefit Ass'n,* 139 Pa. 264, 271, 20 A. 1047); and it is to be construed, like all other written instruments, according to the plain meaning of the language actually used, if this is neither technical nor ambiguous, and nothing has been omitted from or added to the policy by fraud, accident, or mistake (*Hesse v. Travelers' Ins. Co.,* 299 Pa. 125, 149 A. 96).

There is nothing to indicate that the terms "loading" and "unloading" have acquired a different and technical meaning in commercial usage from the popular meaning usually attributed to them, nor does it appear from the policy that it was the intention of the parties to use such terms in a technical or peculiar sense. Consequently, the only question for determination is whether the situation here involved is one which reasonably comes within the terms of the policy issued by appellee.

The "loading and unloading" clause is only an extension of the ownership, maintenance and use clause in the policy. To bring the accident within the "loading and unloading" clause of the policy there must be a connection between the accident and the use of the vehicle insured. The vehicle must have been directly connected with the work of loading; or it must have been an active factor in the operation. See *Wheeler et al. v. London Guarantee & Accident Co.,* 292 Pa. 156, 140 A. 855.

The precise line at which the loading of a truck begins or unloading ends may in some cases be difficult of ascertainment. But in the present case neither the ashes, nor the container in which they were carried,

nor the insured truck was the cause of, or involved in, the accident. The instrumentality that caused the accident was the cellar door. This was merely a convenience preparatory to loading, and was not, under the facts, included in the process of loading the truck. See *Stammer v. Kitzmiller et al.*, 226 Wis. 348, 276 N. W. 629.

We are not unmindful that the decisions from other jurisdictions are not uniform in construing similar clauses in automobile liability policies. But we find no convincing authority which would justify a construction which would include within the coverage of the policy an act independent of any use of the insured vehicle. Our conclusion, under the facts in the instant case, is that the accident did not arise out of the loading of the truck as provided by the policy.

Judgment is affirmed.